## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FELICIA TILLMAN | |
| PLAINTIFF, | Civil Action No. |
| v. | |
| CITY OF ATLANTA, | |
| DEFENDANT. | Jury Trial Demanded |

### PLAINTIFF'S ORIGINAL
### COMPLAINT AND JURY DEMAND

Plaintiff, Felicia Tillman, by and through her undersigned counsel, files this Complaint for discrimination based on disability, failure to accommodate, retaliation and unlawful termination of employment in violation of 42 U.S.C. §§ 12101 et seq. and 29 U.S.C. § 2601 et seq against Defendant, City of Atlanta, and alleges as follows:

PARTIES

1.

Plaintiff Felicia Tillman is a citizen and resident of the United States currently residing in Fayette County, GA.

2.

Defendant City of Atlanta, Department of Employee Assistance and Psychological Services may be served with process by serving its mayor, Andre Dickens at Atlanta City Hall, 55 Trinity Ave SW, Atlanta, GA 30303.

<u>JURISDICTION AND VENUE</u>

3.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C.§ 1343(a)(4).

4.

This suit is authorized and instituted pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA") and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

5.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2023. Plaintiff received her Notice of Rights to Sue on May 13, 2025.

6.

Plaintiff additionally filed an EEOC charge on August 11, 2025 and requested the right to sue for Title VII and ("ADA) retaliation and discrimination for her May 5, 2025 termination.

7.

Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this action occurred within this district.

## FACTUAL BACKGROUND

8.

Plaintiff began her employment with Defendant on or about May 6, 2021, as a Behavioral Health Specialist, Senior.

9.

Plaintiff suffers from serious medical conditions, including lung scarring and pulmonary complications related to COVID-19.

10.

Plaintiff also suffered a disabling foot injury in May 2023, which required surgery and use of a cane.

11.

In February 2023, Plaintiff informed then-Director Dr. Matthew Smith ("Dr. Smith") that her medical conditions were worsening and that she would request FMLA leave.

12.

On March 1, 2023, Plaintiff submitted a request for FMLA leave.

13.

On March 9, 2023, Plaintiff was notified that her FMLA request had been approved.

14.

Later that day, Plaintiff was advised that her FMLA leave was being held up due to an "unknown transaction."

15.

Around this time, Dr. Smith was replaced by Interim Director Derris Mitchell ("Mr. Mitchell").

16.

On or about March 9, 2023, Mr. Mitchell entered Plaintiff's office, slammed documents on her desk, and demanded to know why she was on FMLA leave instead of using sick time.

17.

Mr. Mitchell further demanded to know why Plaintiff "felt the need to protect her job."

18.

After this event, Plaintiff was assigned an increased workload, given tasks outside her job responsibilities, and subjected to abrupt schedule changes with little or no notice.

19.

Plaintiff was repeatedly berated and micromanaged by Mr. Mitchell.

20.

On or about April 4, 2023, Plaintiff complained to HR Director Michael Naftaniel ("Mr. Naftaniel") about Mr. Mitchell's conduct.

21.

Plaintiff began her first FMLA leave on or about April 13, 2023, through April 21, 2023.

22.

When Plaintiff returned, Mr. Mitchell changed the on-call schedule to require Plaintiff to work 24/7 for two weeks, overlapping her preapproved vacation.

23.

Mr. Mitchell also required Plaintiff to prepare and teach six training classes outside of her normal duties.

24.

On May 26, 2023, Plaintiff injured her foot and notified Mr. Mitchell that she would undergo surgery on May 30, 2023.

25.

Plaintiff requested FMLA leave for her surgery.

26.

Mr. Mitchell refused to sign Plaintiff's medical documentation.

27.

Plaintiff was placed on FMLA leave from May 30, 2023, through July 3, 2023.

28.

Plaintiff returned to work using a cane.

29.

Upon her return, Plaintiff was promptly assigned to undesirable tasks, including answering phones.

30.

Plaintiff again complained to Labor Relations on July 21, 2023.

31.

No corrective action was taken.

32.

On August 25, 2023, Plaintiff was diagnosed with COVID-19 and advised Mr. Mitchell.

33.

On September 5, 2023, Plaintiff returned to work.

34.

Mr. Mitchell assigned Plaintiff to perform "check-ins" requiring shifts of 16–20 hours with significant travel.

35.

Shortly after, Plaintiff was diagnosed with pneumonia.

36.

Plaintiff requested FMLA leave for her recovery.

37.

Plaintiff's third FMLA leave ran from September 25, 2023, through October 16, 2023.

38.

Upon returning, Plaintiff requested to work from home for two weeks per her doctor's recommendation.

39.

Defendant denied Plaintiff's request.

40.

Mr. Mitchell removed Plaintiff from client assignments, jeopardizing her professional license.

41.

Plaintiff's earned comp time was also denied though initially approved.

42.

On November 11 and November 22, 2023, Plaintiff made further complaints to Deputy HR Commissioner Candace Kollas.

43.

Defendant failed to take corrective action.

44.

In December 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

45.

After Plaintiff's EEOC charge, Defendant continued to retaliate against her by micromanaging her, denying comp time, deleting client files, and preventing new client assignments.

46.

Plaintiff attempted to transfer to another department in late 2024.

47.

Defendant falsely represented that Plaintiff would be transferred, delayed her start date, and ultimately rescinded the position in December 2024.

48.

Plaintiff continued to face harassment and retaliation through 2024 and 2025.

49.

On May 1, 2025, Plaintiff requested FMLA leave due to psychological stress beginning April 28, 2025, till June 23, 2025.

50.

Plaintiff was required to submit her medical documentation by May 16, 2025.

51.

Plaintiff's treating physician sent the required medical documentation to Defendant on May 4, 2025.

52.

Plaintiff was terminated on May 5, 2025.

<u>COUNT I</u>
<u>DISPARATE TREATMENT IN VIOLATION OF ADA</u>
<u>42 U.S.C. § 12112(a)</u>

53.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 51 of this Complaint as though fully set forth herein.

54.

At all relevant times, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 12111(4).

55.

At all relevant times, Defendant was an "employer" within the meaning of 42 U.S.C. § 12111(5).

56.

Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1).

57.

Plaintiff suffers from serious medical conditions, including pulmonary complications from COVID-19 and a disabling foot injury that required surgery and use of a cane.

58.

Plaintiff's medical conditions substantially limit one or more of her major life activities.

59.

Plaintiff was able to perform the essential functions of her position with or without reasonable accommodation.

60.

Defendant was aware of Plaintiff's disabilities.

61.

Plaintiff engaged in the interactive process by requesting medical leave and reasonable accommodations.

62.

Defendant failed to reasonably accommodate Plaintiff's disabilities.

63.

Instead, Defendant treated Plaintiff less favorably than her non-disabled coworkers.

64.

After Plaintiff disclosed her medical conditions and requested protected leave, Defendant, through Mr. Mitchell, berated Plaintiff and questioned her use of FMLA to "protect her job."

65.

Defendant assigned Plaintiff increased workloads, tasks outside of her job description, and undesirable assignments that were not given to similarly situated, non-disabled employees.

66.

Defendant changed Plaintiff's on-call schedule to overlap with her preapproved vacation, while not making similar changes to non-disabled employees' schedules.

67.

Defendant removed Plaintiff from client assignments, placing her professional license at risk, while not removing her non-disabled counterparts

from their client work.

68.

Defendant denied or retroactively rejected Plaintiff's earned compensatory time, while not denying similar benefits to non-disabled employees.

69.

Defendant repeatedly refused Plaintiff's requests for reasonable accommodations, including her doctor-recommended request to work from home.

70.

Defendant instead singled Plaintiff out for harsher treatment and continued to subject her to harassment and micromanagement because of her disabilities.

71.

Defendant's actions constitute disparate treatment of Plaintiff on the basis of disability in violation of the ADA, 42 U.S.C. § 12112(a).

<u>COUNT II</u>
<u>FAILURE TO ACCOMMODATE IN VIOLATION OF ADA</u>
<u>42 U.S.C. § 12112(b)(5)</u>

72.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 51 of

this Complaint as though fully set forth herein.

73.

At all times relevant, Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

74.

At all times relevant, Defendant was an employer within the meaning of 42 U.S.C. § 12111(5).

75.

Plaintiff suffers from serious medical conditions, including pulmonary complications from COVID-19 and a disabling foot injury requiring surgery and use of a cane.

76.

Plaintiff's conditions substantially limit one or more of her major life activities.

77.

Plaintiff is disabled within the meaning of the ADA, 42 U.S.C. § 12102(1).

78.

Plaintiff was a qualified individual within the meaning of the ADA, 42 U.S.C. § 12111(8).

79.

Plaintiff could perform the essential functions of her position with or without reasonable accommodations.

80.

Defendant was aware of Plaintiff's disabilities and her need for reasonable accommodations.

81.

Plaintiff repeatedly engaged in the interactive process by requesting reasonable accommodations, including medical leave and permission to work from home when medically necessary.

82.

Plaintiff's requests for reasonable accommodation were supported by her physicians.

83.

Defendant failed to properly engage in the interactive process as required by 42 U.S.C. § 12112(b)(5)(A).

84.

Defendant refused to honor Plaintiff's reasonable requests for accommodation, including her request to work from home for two weeks following a medical leave.

85.

Defendant denied Plaintiff's requests for accommodations while granting flexibility and favorable treatment to non-disabled employees.

86.

Defendant also interfered with Plaintiff's ability to obtain accommodations by delaying or refusing to process her medical documentation for FMLA leave.

87.

Defendant's actions forced Plaintiff to work without needed accommodations and placed her health and professional license at risk.

88.

Defendant's refusal to accommodate Plaintiff constitutes a violation of the ADA, 42 U.S.C. § 12112(b)(5).

<u>COUNT III</u>
<u>RETALIATION IN VIOLATION OF ADA</u>
<u>42 U.S.C. § 12203</u>

89.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 51 of this Complaint as though fully set forth herein.

90.

At all times relevant, Plaintiff was an employee of Defendant within

the meaning of 42 U.S.C. § 12111(4).

91.

At all times relevant, Defendant was an employer within the meaning of 42 U.S.C. § 12111(5).

92.

The ADA prohibits retaliation against an employee for asserting rights under the Act. 42 U.S.C. § 12203(a).

93.

Plaintiff engaged in statutorily protected activity by disclosing her disabilities, requesting reasonable accommodations, and requesting protected leave.

94.

Plaintiff also engaged in protected activity by filing internal complaints of discrimination and retaliation with Human Resources and Labor Relations.

95.

Plaintiff further engaged in protected activity by filing a Charge of Discrimination with the EEOC in December 2023.

96.

Defendant, through its agents, retaliated against Plaintiff for engaging in these protected activities.

97.

Retaliatory acts included, but were not limited to: (a) berating Plaintiff for using FMLA leave to "protect her job"; (b) assigning Plaintiff excessive workloads and tasks outside her position; (c) abruptly changing her schedule to overlap with pre-approved vacation; (d) denying or retroactively rejecting Plaintiff's earned compensatory time; (e) removing Plaintiff from client assignments, jeopardizing her license; (f) refusing her doctor-recommended request to work from home; (g) micromanaging and publicly humiliating Plaintiff; (h) rescinding a promised departmental transfer; and (i) terminating Plaintiff's employment.

98.

Defendant's retaliatory conduct began after Plaintiff engaged in protected activity and continued through the end of her employment.

99.

Defendant's actions would dissuade a reasonable employee from engaging in protected activity under the ADA.

100.

Defendant's conduct constitutes retaliation in violation of the ADA, 42 U.S.C. § 12203.

<u>COUNT IV</u>

<u>RETALIATION IN VIOLATION OF FMLA</u>
<u>29 U.S.C. § 2615(a)(2)</u>

101.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 51 of this Complaint as though fully set forth herein.

102.

At all times relevant, Plaintiff was an "employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2).

103.

At all times relevant, Defendant was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

104.

Plaintiff was eligible for FMLA leave and exercised her rights under the FMLA.

105.

Plaintiff engaged in statutorily protected activity by requesting and taking FMLA leave for her serious health conditions on multiple occasions, including but not limited to: (a) April 13–21, 2023, (b) May 30–July 3, 2023, and (c) September 25–October 16, 2023.

106.

Plaintiff also requested and submitted medical documentation for

another period of FMLA leave on May 1 and 4, 2025.

107.

After Plaintiff engaged in protected activity, Defendant retaliated against her.

108.

Retaliatory acts included, but were not limited to: (a) increasing Plaintiff's workload and assigning tasks outside her job duties; (b) altering Plaintiff's schedule to overlap with her preapproved vacation; (c) refusing to sign Plaintiff's FMLA paperwork; (d) denying Plaintiff comp time earned for excessive hours worked; (e) micromanaging, berating, and harassing Plaintiff after her returns from FMLA leave; (f) removing Plaintiff's client caseload and jeopardizing her professional license; (g) deleting Plaintiff's client records and refusing to assign new clients to her; and (h) terminating Plaintiff's employment the day after she submitted medical documentation for another FMLA leave in May 2025.

109.

Defendant's adverse actions were causally connected to Plaintiff's exercise of her FMLA rights.

110.

Defendant's actions violated 29 U.S.C. § 2615(a)(2) and the

Department of Labor's implementing regulations at 29 C.F.R. § 825.220(c).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a trial by jury on all issues trial by a jury and

respectfully requests the following relief:

1. Compensatory damages for lost wages, economic benefits of employment to

   Plaintiff in the amount to be determined by the trier of fact;

2. Compensation for emotional distress and humiliation;

3. Punitive damages to punish Defendant for its discriminatory actions;

4. Cost of litigation in this action and her reasonable attorney's fees;

5. Any other relief the Court deems just and proper.

   Respectfully submitted this 11th day of August 2025.


**JESSE KELLY PC**
By:    /s/ Jesse L. Kelly
Jesse L. Kelly, Esq.
Georgia Bar No. 935869
355 Lenox Road Suite 1000
jesse@jkellypc.com

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 5.1, the undersigned, attaches this Certificate of Service

This 11th day of August 2025.

**JESSE KELLY PC**

*/s/ Jesse Kelly*

**Jesse L. Kelly**
Ga Bar No. 935869
3355 Lenox Rd. Suite 1000,
Atlanta, GA 30326
Phone: (678) 460-6801
Fax: (678) 730-3443
jesse@jkellypc.com